**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Tjaden v. Geauga Cty. Bd. of Elections*, Slip Opinion No. 2024-Ohio-3396.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-3396

THE STATE EX REL. TJADEN *v.* GEAUGA COUNTY BOARD OF ELECTIONS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Tjaden v. Geauga Cty. Bd. of Elections*, Slip Opinion No. 2024-Ohio-3396.]**

*Elections—Mandamus—Writ sought to compel board of elections to certify relator's name to general-election ballot—Board of elections did not abuse its discretion or act in disregard of applicable legal provisions in refusing to certify relator's candidacy and place his name on the ballot—Writ denied.*

(No. 2024-1041—Submitted September 3, 2024—Decided September 4, 2024.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and DEWINE, STEWART, and DETERS, JJ. FISCHER, J., concurred in judgment only. BRUNNER, J., concurred in judgment only, with an opinion joined by DONNELLY, J.

**Per Curiam.**

{¶ 1} Relator, Justin Tjaden, seeks a writ of mandamus ordering his name to be placed on the November 5, 2024 general-election ballot as an independent candidate for the office of state representative of Ohio House District 99. Tjaden's complaint names the Geauga County and Ashtabula County Boards of Elections (collectively, the "boards") as respondents.

{¶ 2} Tjaden's candidate petition was determined to be 124 valid signatures short of the number required to qualify for the ballot. Tjaden contends that the boards exceeded their statutory authority when they struck signatures as "not genuine" and that in doing so, they violated his procedural-due-process rights guaranteed by the United States Constitution and the Ohio Constitution. He also contends that the invalidation of his candidacy violates his constitutional rights to equal protection under the law guaranteed by the United States Constitution. Tjaden argues that R.C. 3513.257(C), which required him to submit a petition containing signatures amounting to at least one percent of House District 99 registered voters who cast ballots for governor in the 2022 general election, is unconstitutional. The boards dispute Tjaden's claims and have moved to strike evidence that Tjaden filed with his reply brief.

{¶ 3} We grant the motion to strike and deny the writ.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Tjaden Attempts to Qualify for the General-Election Ballot

{¶ 4} Tjaden aspires to be an independent candidate for the office of state representative of Ohio House District 99, which encompasses territory in Ashtabula and Geauga Counties. R.C. 3513.257 governs the process for an independent candidate to qualify for the general-election ballot. As pertinent to this case, the statute provides:

> Each person desiring to become an independent candidate for an office for which candidates may be nominated at a primary election . . . shall file no later than four p.m. of the day before the day of the primary election immediately preceding the general election at which such candidacy is to be voted for by the voters, a statement of candidacy and nominating petition as provided in section 3513.261 of the Revised Code.
>
> . . .
>
> (C) If the candidacy is to be voted on in any district . . . in which five thousand or more electors voted for the office of governor at the most recent election for that office, the nominating petition shall contain a number of signatures equal to at least one per cent of those electors.

R.C. 3513.257. According to the Geauga board, based on the statute's one-percent requirement, independent state-representative candidates for House District 99 needed 495 valid signatures to qualify for the general-election ballot.

{¶ 5} Major-party candidates for the office of state representative cannot proceed directly to the general-election ballot. Rather, they must first run for their party's nomination at a primary election. To become a candidate for a major-party nomination at a primary election, a state-representative candidate must submit at least 50 signatures from "qualified electors [from within the district] who are members of the same political party as the political party of which the candidate is a member." R.C. 3513.05.

{¶ 6} On March 18, 2024, the day before Ohio's primary election, Tjaden filed his statement of candidacy and nominating petition with the Geauga board.[1]

---

1. Tjaden filed his petition with the Geauga board because Geauga County is the more populous of the two counties in which House District 99 sits. *See* R.C. 3513.261.

Tjaden's petition consisted of 26 part-petitions containing 552 total signatures. The Geauga board kept for its review the 12 part-petitions containing signatures of purported electors from Geauga County and, as required by R.C. 3513.262, it transmitted to the Ashtabula board for that board to review the 14 part-petitions containing signatures of purported electors from Ashtabula County.

{¶ 7} On March 28, an office administrator with the Geauga board informed Tjaden that his petition contained 371 valid signatures, which was 124 fewer than the amount required to qualify for the general-election ballot. The administrator advised Tjaden that the Geauga board's director and deputy director would suggest to the full board that Tjaden's name not be certified for the November 5, 2024 general-election ballot. Tjaden was also advised that the Geauga board would review the petitions and "may take official action" at a special meeting scheduled for April 9, 2024.

{¶ 8} The Geauga board's summary of its petition review shows that it invalidated 72 total signatures; of those, 28 were invalidated as "Not Genuine – Sig does not match" and 24 were invalidated as "Not Registered Address." The Ashtabula board found 118 total signatures invalid; of those, 38 signatures were invalidated as "Not Genuine – Sig does not match" and 21 were invalidated as "Not Registered Address."

{¶ 9} On April 2, Tjaden emailed a letter to the Geauga board, asking the Geauga board to defer its vote on his petition until a court could rule on the legality of R.C. 3513.257(C)'s requirements "concerning the number and nature of signatures . . . for Independent candidates." When the Geauga board did not accede to Tjaden's request, he attempted to file an action in the Geauga County Court of Common Pleas on April 8 for a temporary restraining order, preliminary injunction, and declaratory judgment. That same day, Tjaden emailed a copy of the complaint to the Geauga board along with a letter asking the board to provide him with the time and location of the meeting scheduled for the following day.

{¶ 10} On the morning of April 9, the Geauga board's director advised Tjaden by email that the board's meeting would proceed as scheduled later that morning and that independent-candidate petitions were on the meeting agenda. In response, Tjaden indicated that he would not attend the meeting and asked that the board's vote on his petition be deferred. The Geauga board proceeded with the meeting as scheduled and voted to not certify Tjaden's candidacy for lack of the required number of petition signatures.[2] Meanwhile, on April 10, the Geauga County clerk of courts rejected Tjaden's April 8 complaint because Tjaden had failed to sign the praecipe for service.

## B. Tjaden Files Two Lawsuits

{¶ 11} Tjaden did not request reconsideration of the Geauga board's decision. Instead, on June 12, Tjaden filed another complaint in the Geauga County Court of Common Pleas, suing the boards and their members under 42 U.S.C. 1983 and seeking a declaratory judgment and an award of damages. The following day, Tjaden also brought his first mandamus action in this court. *See State ex rel. Tjaden v. Geauga Cty. Bd. of Elections*, case No. 2024-0881. In that mandamus case, Tjaden asked this court for various relief, including a writ of mandamus ordering the placement of his name on the ballot and a determination that R.C. 3513.257(C)'s signature requirement for independent candidates is unconstitutional.

{¶ 12} On June 27, in light of the earlier-filed Geauga County Court of Common Pleas action, this court dismissed case No. 2024-0881 based on the jurisdictional-priority rule. 2024-Ohio-2448. Two weeks after that dismissal, however, all defendants in the common-pleas-court case (which include the boards

---

2. Although the Ashtabula board determined the validity or invalidity of the signatures of purported electors from Ashtabula County, it was the Geauga board—the board with which Tjaden filed his petition—that determined "[a]ll other matters affecting the validity or invalidity of [the] petition papers," R.C. 3513.262.

in this action) removed that action to the United States District Court for the Northern District of Ohio, Eastern Division.

### C. Tjaden Files a Second Mandamus Action

{¶ 13} One week after Tjaden's common-pleas-court lawsuit was removed to federal court, he filed this action.[3] The 235-paragraph complaint alleges largely the same legal theories as his first mandamus complaint. Tjaden's prayer for relief in this case, however, is simplified and seeks only a writ of mandamus ordering the Geauga board to place his name on the ballot as an independent candidate for Ohio House District 99. Tjaden also filed a motion for an expedited hearing schedule.

{¶ 14} The boards filed a joint motion to dismiss, which we denied. 2024-Ohio-2897. We granted Tjaden's motion for an expedited hearing schedule, granted an alternative writ, and ordered the parties to submit their evidence and merit briefs under an expedited schedule. *Id.*

{¶ 15} Along with his reply brief, Tjaden filed Exhibit Q, which purports to be a table of vote totals from the 2022 election showing the number of voters from the Geauga and Ashtabula County precincts comprising House District 99 who cast votes for governor. The boards then filed a motion to strike Exhibit Q as an untimely submission of evidence. Tjaden has opposed the motion to strike.

## II. ANALYSIS

### A. Motion to Strike

{¶ 16} The boards have moved to strike Tjaden's Exhibit Q as untimely under this court's alternative-writ schedule and as improper rebuttal evidence under S.Ct.Prac.R. 12.06(B). We grant the motion.

---

3. According to Tjaden, the removal of his common-pleas-court lawsuit to federal court has lifted the jurisdictional-priority-rule bar to a mandamus action in this court. *See State ex rel. McGirr v. Winkler*, 2017-Ohio-8046, ¶ 19 (jurisdictional-priority rule "does not apply to proceedings in federal court"). The boards, which argued that the jurisdictional-priority rule barred Tjaden's first mandamus action, have not argued that the jurisdictional-priority-rule applies in this case.

{¶ 17} In his complaint, Tjaden contested not only the boards' invalidation of signatures as either not genuine or not having a valid registered address, but also the premise that 495 signatures is the correct number that he had to obtain. In his merit brief, Tjaden continued to contend that the number of valid signatures his petition required "remains in question." However, Tjaden did not submit any *evidence* tending to prove how many signatures were required until he filed Exhibit Q with his reply brief.

{¶ 18} Exhibit Q is untimely under this court's deadline for the submission of evidence, which we set when we granted an alternative writ under S.Ct.Prac.R. 12.05. Accordingly, Exhibit Q is stricken. *See State ex rel. Gil-Llamas v. Hardin*, 2021-Ohio-1508, ¶ 14. And even if we were to regard Exhibit Q as rebuttal evidence, we would strike it for noncompliance with S.Ct.Prac.R. 12.06(B). Under that rule, a relator desiring to file rebuttal evidence must file a motion for leave to do so. *Id.* Tjaden did not seek leave to file Exhibit Q here.[4]

### B. No Relief Sought Against the Ashtabula Board

{¶ 19} The Ashtabula board argues that the writ should be denied as against it because Tjaden has not asked for any relief against the Ashtabula board. We agree and deny the writ against the Ashtabula board on that ground.

{¶ 20} To be sure, Tjaden challenges the determinations of both boards with respect to the invalidation of signatures on his candidate petition as "not genuine." But in his complaint, Tjaden asks only for a writ of mandamus directing the Geauga board to "repeal their prior decision" rejecting his candidacy and to "place [his] name on the ballot as an Independent candidate for Ohio House District 99." The complaint contains no prayer for relief as to the Ashtabula board. *See State ex rel.*

---

4. Along with their motion to strike, the boards filed a "notice of clarification" and affidavits to demonstrate why 495 signatures were required for Tjaden to qualify for the general-election ballot as an independent candidate. We disregard this argument and evidence. Just as Tjaden's Exhibit Q is untimely evidence, so too is the boards' evidence in response. And their "notice of clarification" is, in substance, supplemental briefing prohibited by S.Ct.Prac.R. 16.08.

*Walker v. LaRose*, 2021-Ohio-825, ¶ 13, 15 (denying writ as against respondents who could not provide relief relators sought in complaint); *State ex rel. DeBlase v. Ohio Ballot Bd.*, 2023-Ohio-1823, ¶ 14 (lead opinion) (denying writ as to respondents who were named in complaint but against whom relators did not request relief).

### C. Mandamus Claim Against the Geauga Board

**{¶ 21}** To be entitled to the requested writ of mandamus, Tjaden must establish a clear legal right to certification of his state-representative candidacy and placement of his name on the November 5, 2024 general-election ballot, a corresponding clear legal duty on the part of the Geauga board to certify Tjaden's candidacy and place his name on the ballot, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Allen v. Warren Cty. Bd. of Elections*, 2007-Ohio-4752, ¶ 8.

**{¶ 22}** Tjaden lacks an adequate remedy in the ordinary course of the law. He has no mechanism to appeal the Geauga board's decision not to certify his candidacy; and even though Tjaden could (and has) pursued a declaratory-judgment action, a declaratory judgment would not afford him a complete remedy unless it was coupled with a mandatory injunction to compel the Geauga board to place his name on the ballot. *See State ex rel. Nauth v. Dirham*, 2020-Ohio-4208, ¶ 12 ("When a mandatory injunction would be needed to obtain complete relief, a declaratory-judgment action is not an adequate remedy at law and mandamus is an appropriate remedy."). Moreover, the election is approximately 60 days away, and the deadline for finalizing ballots under the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. 20301 et seq., is September 20. *See* R.C. 3511.04(B); *State ex rel. Coughlin v. Summit Cty. Bd. of Elections*, 2013-Ohio-3867, ¶ 18.

**{¶ 23}** The first two elements for mandamus relief require this court to determine whether the Geauga board engaged in fraud, corruption, or abuse of

discretion or acted in clear disregard of applicable law. *Allen* at ¶ 9. Tjaden has presented no evidence to show fraud or corruption.[5] Accordingly, Tjaden's entitlement to relief turns on whether the Geauga board abused its discretion or disregarded applicable law.

### 1. We Need Not Reach the Signature-Validity Question

{¶ 24} Tjaden argues that the boards did not have the authority to review signatures on his part-petitions for whether they matched voters' signatures on their registration cards. He argues that there is no provision in either statutory law or in the secretary of state's directives to the boards of elections that requires a petition signer's signature to match his or her signature or "legal mark" in the voter-registration records. Accordingly, Tjaden contends that the boards exceeded the scope of their statutory authority when they invalidated signatures on his petition as "not genuine" because of what Tjaden refers to as "slight variations" between a voter's signature on the petition and the voter's signature as it appears in the voter-registration records.

{¶ 25} We need not address Tjaden's challenge to the number of signatures that were stricken as "not genuine." The admissible evidence in the record establishes that Tjaden needed 495 valid signatures to qualify for the general-election ballot as an independent candidate for the office of state representative of House District 99. Tjaden's petition had 371 valid signatures after review by the boards—124 short of the number he purportedly needed. In his merit brief, however, Tjaden challenges only the 66 signatures invalidated as "not genuine," arguing that the boards lacked the statutory authority to compare a person's petition

---

5. In his reply brief, Tjaden suggests that the boards "either knew, or should have known" that he needs fewer than 495 signatures to qualify for the ballot but have "continued to assert these false claims" that 495 signatures are required. Tjaden does not expressly call this "fraud." Regardless, because he raised this argument only in his reply brief, this court need not address it. *See State ex rel. Murray v. Scioto Cty. Bd. of Elections*, 2010-Ohio-5846, ¶ 58.

signature with the signature on that person's voter-registration card.[6] But even if this court were to hold that all of the signatures invalidated as "not genuine" should have been counted, Tjaden would still not have enough valid signatures to qualify for the ballot. To address whether the boards erred in invalidating those signatures would merely be an advisory opinion. *See State ex rel. Heavey v. Husted*, 2018-Ohio-1152, ¶ 12 (deeming it unnecessary to address issues raised in the parties' briefs when proving that all of the contested signatures were valid would still leave relators short of the number required to qualify for the ballot); *see also State ex rel. Barletta v. Fersch*, 2003-Ohio-3629, ¶ 22 (stating that "we will not issue advisory opinions, and this rule applies equally to election cases").

{¶ 26} At most, Tjaden's argument, even if successful, would add only 66 valid signatures to his total, still leaving him short of qualifying for the ballot. It is therefore unnecessary for us to decide whether the boards properly invalidated signatures as "not genuine." *See Heavey* at ¶ 12.

{¶ 27} Tjaden's equal-protection challenge to the validity of R.C. 3513.257 does not affect this view. He argues that R.C. 3513.257(C) violates the Equal Protection Clause, U.S. Const., amend. XIV, § 1, because "the signature requirements for Independent candidates are significantly more burdensome than those for major party candidates, creating an unconstitutional disparity." Tjaden suggests that R.C. 3513.257(C), to be constitutionally valid, should require him to obtain no more than 250 valid signatures. The boards already determined that Tjaden's petition had more than 250 valid signatures. Accordingly, to decide whether 66 more signatures were valid would be to issue an advisory opinion.

---

6. Tjaden's complaint in this case also alleged that the boards' invalidation of signatures on his part-petitions based on the boards' designation of "not registered address" was improper. However, Tjaden did not develop or advance that argument in his merit brief. Accordingly, his challenge to the "not registered address" invalidations is forfeited. *See State ex rel. Stuart v. Greene*, 2020-Ohio-3685, ¶ 10.

**{¶ 28}** Therefore, we decline to address Tjaden's argument that the boards exceeded their authority by invalidating petition signatures as "not genuine" due to their inconsistency with the signatures on electors' voter-registration cards.

### 2. Procedural Due Process

**{¶ 29}** Tjaden contends that the Geauga board's final decision on April 9 not to certify his candidacy deprived him of his procedural-due-process rights guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.[7]  Quoting from R.C. 3501.39(A)(4), Tjaden argues in his merit brief that "a board of elections is *required* to accept petitions *unless a written protest is filed by the public*, and 'the candidate's . . . petition violates the requirements of . . . Chapter 3513 [sic] of the Revised Code, or any other requirements established by law."  (Emphasis added; ellipses and alterations in original.)  There was no protest of Tjaden's candidacy in this case, and Tjaden argues that he was not provided with notice and an opportunity to be heard to challenge the Geauga board's decision not to certify his name to the general-election ballot.

**{¶ 30}** As an initial matter, Tjaden is wrong about the authority of a board of elections to invalidate a candidate petition.  Tjaden suggests that the boards were *required* to accept his petition as valid *unless* there was a written protest of his candidacy by a member of the public.  Tjaden relies on R.C. 3501.39(A) for this proposition, but he misreads it.  That provision states:

---

7. It is not clear whether there is a constitutionally protected interest in becoming a candidate for state office.  *See, e.g.*, *Moncier v. Haslam*, 570 Fed.Appx. 553, 559 (6th Cir. 2014) (holding that there is no "federally protected interest" to run for state office); *Miller v. Lorain Cty. Bd. of Elections*, 141 F.3d 252, 260 (6th Cir. 1998) (observing that "whether an individual has a constitutionally protected interest in becoming a candidate for public office is not clear").  We assume without deciding that Tjaden has a cognizable property or liberty interest for procedural-due-process purposes.  *See Miller* at 260; *id*. at 260, fn. 8.

The secretary of state or a board of elections shall accept any petition described in section 3501.38 of the Revised Code *unless one of the following occurs*:

(1) A written protest against the petition or candidacy, naming specific objections, is filed, a hearing is held, and a determination is made by the election officials with whom the protest is filed that the petition is invalid, in accordance with any section of the Revised Code providing a protest procedure.

(2) A written protest against the petition or candidacy, naming specific objections, is filed, a hearing is held, and a determination is made by the election officials with whom the protest is filed that the petition violates any requirement established by law.

. . .

(4) The candidate's candidacy or the petition violates the requirements of [R.C. Ch. 3501], Chapter 3513. of the Revised Code, or any other requirements established by law.

(Emphasis added.) R.C. 3501.39(A). Tjaden reads the statute to mean that a written protest is a prerequisite to a board of elections' ability to invalidate a petition under R.C. 3501.39(A)(4). But a board of elections can reject a petition on *any one of* the grounds in R.C. 3501.39(A)(1) through (4). In this case, the boards invalidated signatures on Tjaden's part-petitions in accordance with their statutory duties. *See* R.C. 3513.257(C) (authorizing a board of elections to "verify[]" the signatures on a candidate's petition); R.C. 3513.262 (requiring a board of elections to "examine and determine the sufficiency of the signatures on the petition papers transmitted to or filed with it, and the validity of the petitions filed with it"). The boards therefore acted consistently with their authority under R.C. 3501.39(A)(4).

12

**{¶ 31}** Tjaden also takes issue with the fact that the Geauga board did not conduct an evidentiary hearing at which he could have had the opportunity to challenge its actions. As a statutory matter, the Geauga board was not required to hold such a hearing. *See* R.C. 3513.262, paragraph four (providing for written protests against nominating petitions but not for protests by a person whose nominating petition was invalidated); *State ex rel. Van Auken v. Blackwell*, 2004-Ohio-5355, ¶ 5 (10th Dist.) (explaining that "no statutory provision provides a means by which a candidate whose petitions have been disallowed can protest that decision").

**{¶ 32}** Tjaden argues, however, that the Geauga board's failure to hold a hearing enhances his procedural-due-process claim based on an alleged "spoliation of evidence crucial to his case." His theory seems to be that the lack of a hearing prevented him from presenting evidence to challenge the boards' invalidation of signatures and the Geauga board's decision not to certify his candidacy. Thus, Tjaden's argument seems to be that he is entitled to an inference that the evidence that would have been presented at a hearing would have been favorable to him. If this is Tjaden's theory, it is without merit because the "adverse inference" principle is inapplicable in this context.

**{¶ 33}** "The concept of negative, or adverse, inference arises where a party who has control of the evidence in question fails, without satisfactory explanation, to provide the evidence." *Brokamp v. Mercy Hosp. Anderson*, 132 Ohio App.3d 850, 870 (1st Dist. 1999). But Tjaden is not asking for an adverse inference because of the boards' failure to safeguard or provide evidence. Rather, Tjaden wants an adverse inference to arise simply because there was no hearing at which he was granted the opportunity to provide evidence before the Geauga board declined to certify his petition. Tjaden has not argued, much less shown, how the Geauga board spoliated evidence.

{¶ 34} Tjaden's procedural-due-process claim falls short for another reason: he is receiving all the process to which he is due. In other election cases, this court has rejected procedural-due-process arguments because a "mandamus action provides all the process that relators are due." *Nauth*, 2020-Ohio-4208, at ¶ 24; *see also State ex rel. Thomas v. Wood Cty. Bd. of Elections*, 2024-Ohio-379, ¶ 52 (same). This mandamus action is the procedural mechanism for Tjaden to establish his right to relief. *Compare Miller v. Lorain Cty. Bd. of Elections*, 141 F.3d 252, 260 (6th Cir. 1998) (no procedural-due-process claim when candidate requested reconsideration, presented his challenge to the board of elections at a hearing, and could have pursued a mandamus action after the board upheld its decision to invalidate his nominating petition). Accordingly, Tjaden's claim predicated on a deprivation of procedural due process is without merit.

### 3. Equal Protection

{¶ 35} Tjaden also contends that he is entitled to a writ of mandamus ordering placement of his name on the ballot because R.C. 3513.257(C) is unconstitutional on its face and as applied to his petition. Specifically, Tjaden challenges the statute's requirement that he obtain signatures of one percent of House District 99's electors who voted in the 2022 gubernatorial election when major-party candidates running for the same office needed just 50 signatures to qualify for the primary-election ballot. Although other courts have upheld R.C. 3513.257(C) against similar constitutional challenges, *see Miller* at 257-258; *State ex rel. Wilcoxson v. Harsman*, 2010-Ohio-4048, ¶ 40-50 (2d Dist.), Tjaden contends that his claim is different. He argues that R.C. 3513.257(C) is unconstitutional as applied to the situation in House District 99, because the partisan candidates were unopposed at the primary election, thus automatically qualifying them for the general-election ballot when they submitted their 50-signature petitions for the primary election. Tjaden's theory is that the major-party candidates for House District 99, in reality, qualified for the general election with

just 50 signatures of electors from their respective parties while he needed nearly ten times more than that to qualify for the general-election ballot as an independent candidate.

{¶ 36} Tjaden cannot obtain his requested relief in mandamus even were he to prevail on his equal-protection claim, so we therefore need not opine on it. Tjaden seeks a writ of mandamus compelling the Geauga board to declare his petition valid and place him on the ballot as an independent candidate for state representative of House District 99. His theory that he is qualified for the ballot—notwithstanding his failure to satisfy the signature requirements for his candidate petition—depends on this court declaring R.C. 3513.257(C) unconstitutional.

{¶ 37} This court has recognized that a writ of mandamus ordering a candidate's placement on the ballot *could* be an appropriate remedy following a successful constitutional challenge to an election statute. *See State ex rel. Purdy v. Clermont Cty. Bd. of Elections*, 77 Ohio St.3d 338, 341-342 (1996). The statute at issue in *Purdy*, former R.C. 3513.04, 146 Ohio Laws, Part I, 549, 669, stated that "no person who seeks party nomination for an office or position at a primary election by declaration of candidacy . . . shall be permitted to become a candidate at the following general election for any office by nominating petition or by write-in." *See also Purdy* at 339. A protest to the relators' general-election candidacies for the state board of education had been sustained based solely on R.C. 3513.04, because the relators had been defeated in that year's primary election when they ran for other offices. *Purdy* at 338-339. But for the operation of R.C. 3513.04, the relators in *Purdy* would have qualified for the general-election ballot for the nonpartisan offices they sought. Thus, they "[had] a clear legal right to have their petitions certified if [this court] determined that R.C. 3513.04 was unconstitutional as applied to their situation." *Purdy* at 342.[8]

---

8. This court ultimately held that R.C. 3513.04 was constitutional and denied the writ. *Purdy*, 77 Ohio St.3d at 346.

**{¶ 38}** This case is different from *Purdy*. Whereas the relators in that case had a clear legal right to have their petitions certified for the general-election ballot if the challenged statute was declared unconstitutional, *id.*, the same cannot be said about Tjaden's challenge to R.C. 3513.257(C). If this court were to agree with Tjaden and declare R.C. 3513.257(C) unconstitutional, it would mean that the statute is of no force and effect. *See Funk v. Rent-All Mart, Inc.*, 91 Ohio St.3d 78, 80 (2001). But in that instance, Tjaden would be hoisted by his own petard: without R.C. 3513.257(C) in effect, there is no statute that sets forth the requirements for an independent candidate to qualify for the general-election ballot.

**{¶ 39}** Tjaden suggests that this court can create a new signature requirement and grant a writ of mandamus placing him on the ballot because he has met that new threshold. But "courts cannot create the legal duty that is enforceable in mandamus; the creation of [a duty enforceable in mandamus] is a legislative and not a judicial function." *State ex rel. Whitehead v. Sandusky Cty. Bd. of Commrs.*, 2012-Ohio-4837, ¶ 31. Nor can this court change the statutory signature requirement to a number that Tjaden suggests is constitutional. "[C]ourts are forbidden to add a nonexistent provision to the plain language of legislation." *Id.* at ¶ 30.

**{¶ 40}** While it is true that "the constitutionality of a statute may, in certain instances, be challenged by mandamus," *Purdy*, 77 Ohio St.3d at 341, this case is not one of those instances. Tjaden essentially asks this court to (1) declare R.C. 3513.257(C) unconstitutional as applied to his candidacy, (2) impose a lesser signature requirement that is not provided by statute, (3) find that he satisfied the lesser requirement, and (4) grant a writ of mandamus ordering placement of his name on the ballot as an independent candidate. But while Tjaden is heavy on arguments that R.C. 3513.257(C) is unconstitutional, he points this court to no logical path that entitles him to relief *in mandamus*. We therefore deny the writ without reaching the merits of his equal-protection argument.

16

## CONCLUSION

{¶ 41} For the foregoing reasons, we grant the boards' motion to strike and deny the writ.

Writ denied.

_____

**BRUNNER, J., concurring in judgment only.**

{¶ 42} I concur in this court's granting the motion of respondents, the Geauga County and Ashtabula County Boards of Elections, to strike the evidence that relator, Justin Tjaden, filed with his reply brief. But I concur in judgment only in the per curiam opinion of the court. I would address the merits of Tjaden's equal-protection challenge, even though an independent candidate who seeks direct access to the *general*-election ballot is not similarly situated to a major-party candidate who seeks access to a *primary*-election ballot. *See, e.g.*, *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 602 (2008) (discussing the "class-of-one theory" of equal protection as an application of the principle that equal protection is concerned with arbitrary government classification); *Anderson v. Mills*, 664 F.2d 600, 607 (6th Cir. 1981) (addressing an equal-protection challenge of an election scheme that required a major-party candidate in a primary election to gather a different number of signatures than an independent candidate seeking a place on the general-election ballot by petition). I therefore concur only in the judgment of the majority.

DONNELLY, J., concurs in the foregoing opinion.

_____

Justin D. Tjaden, pro se.

Mazanec, Raskin & Ryder Co., L.P.A., and Frank H. Scialdone; and Colleen M. O'Toole, Ashtabula County Prosecuting Attorney, and Matthew J. Hebebrand, Assistant Prosecuting Attorney, for respondent Ashtabula County Board of Elections.

James R. Flaiz, Geauga County Prosecuting Attorney, and Kristen Rine, Assistant Prosecuting Attorney, for respondent Geauga County Board of Elections.

_____