**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Hill v. LaRose*, Slip Opinion No. 2026-Ohio-1601.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1601

THE STATE EX REL. HILL *v*. LAROSE, SECY. OF STATE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Hill v. LaRose*, Slip Opinion No. 2026-Ohio-1601.]**

*Elections—Mandamus, declaratory judgment, and injunction—Writ sought to compel secretary of state to accept replacement candidate for lieutenant governor—R.C. 3513.311(C) does not permit replacement of candidate for lieutenant governor within 70 days of primary election unless former candidate died—Court lacks original jurisdiction over claims seeking declaratory judgment or prohibitory injunction—Complaint dismissed.*

(No. 2026-0531—Submitted May 1, 2026—Decided May 4, 2026.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ.  FISCHER, J., concurred in judgment only.  BRUNNER, J., concurred in judgment only, with an opinion.

**Per Curiam.**

{¶ 1} Relator, Heather Hill, seeks to become a candidate for Ohio Governor at the upcoming May 5, 2026 primary election. Hill brought this original action against respondent, Ohio Secretary of State Frank LaRose, after he refused to accept Hill's replacement candidate for Ohio Lieutenant Governor, Larry Barnett. Hill nominated Barnett as her replacement after her former running mate, Stuart Moats, withdrew his candidacy. In rejecting Barnett as the replacement candidate, LaRose explained to Hill that R.C. 3513.311(C) did not permit her to replace Moats with Barnett within 70 days of the primary, because that provision of the statute allows replacement of only a candidate who has died. LaRose's determination left Hill without a running mate, prompting LaRose to inform Hill that she had been rendered ineligible to appear on the ballot and any ballots cast for her would not be counted.

{¶ 2} Hill's complaint contains three counts. First, she asserts a mandamus claim, seeking an order from this court directing LaRose to (1) accept Barnett as Hill's replacement candidate for lieutenant governor, (2) certify Hill to the ballot, and (3) count all votes cast for her. Second, she asserts a claim for a declaratory judgment, asking this court to (1) declare that R.C. 3513.311(C) permits the replacement of a lieutenant-governor candidate who withdraws (rather than dies) within 70 days of a primary election or, alternatively, (2) declare R.C. 3513.311(C) unconstitutional as applied, to the extent that the court determines that the statute does not support Hill's interpretation. And third, she asserts a claim for injunctive relief, asking this court to enjoin LaRose from enforcing his determinations. LaRose has filed a motion to dismiss under Civ.R. 12(B)(6).

{¶ 3} For the reasons that follow, we dismiss the complaint. Also pending is Hill's emergency motion for an expedited order, which we deny.

## I.  BACKGROUND

{¶ 4} Because this case is before the court on a motion to dismiss, we must presume that the factual allegations in Hill's complaint are true.  *See State ex rel. Yeager v. Lake Cty. Court of Common Pleas*, 2024-Ohio-1921, ¶ 7.  Until recently, Hill was qualified as a candidate for governor at the upcoming May 5, 2026 primary election.  Originally, Hill's running mate for lieutenant governor was Moats.  But on April 22—13 days before the primary election—Moats withdrew his candidacy. Hill subsequently attempted to have Barnett certified as her replacement candidate for lieutenant governor.  To that end, the day after Moats withdrew, Hill submitted to LaRose's office an affidavit attesting that she had named Barnett as the replacement for Moats.  LaRose refused to accept Barnett as Hill's replacement running mate, stating that under R.C. 3513.311(C), a replacement candidate for lieutenant governor could not be certified within 70 days before the election unless the original candidate for lieutenant governor had died.  LaRose then advised Hill that because she lacked a running mate, she was deemed ineligible to appear on the ballot and any votes cast for her would not be counted.

{¶ 5} On April 28, Hill brought this original action against LaRose. Concurrent with the filing of her complaint, Hill filed an emergency motion asking for a writ of mandamus and certain forms of procedural relief.  LaRose filed a combined document in response, asking for dismissal of Hill's complaint and opposing her emergency motion.

{¶ 6} The case is ripe for a determination on Hill's emergency motion and LaRose's motion to dismiss.

## II.  ANALYSIS

### A.  Emergency motion

{¶ 7} Hill's emergency motion asks for an order (1) granting a writ of mandamus, (2) requiring LaRose to file a response to her complaint within one day of the filing of the complaint, and (3) permitting Hill to file a "reply brief" within

one day of receiving service of LaRose's response. We deny Hill's emergency motion. First, for the reasons set forth below, Hill fails to state a claim for relief in mandamus. Second, this court ordered LaRose to file a response to the complaint within one day of the complaint's filing, 2026-Ohio-1536, which he did. And third, this court afforded Hill the opportunity to file a response to LaRose's motion to dismiss, *id.*, which she did.

### B. Motion to dismiss

{¶ 8} LaRose moves to dismiss under Civ.R. 12(B)(6). Dismissal under this standard is appropriate if we find that after presuming the truth of the complaint's factual allegations and drawing all reasonable inferences in Hill's favor, it appears beyond doubt that she could prove no set of facts entitling her to relief. *See Yeager*, 2024-Ohio-1921, at ¶ 7.

### 1. Mandamus (Count 1)

{¶ 9} LaRose's motion to dismiss focuses on the mandamus claim asserted in Hill's complaint. To be entitled to a writ of mandamus, Hill must show (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of LaRose to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Tjaden v. Geauga Cty. Bd. of Elections*, 2024-Ohio-3396, ¶ 21. Because of the proximity of the upcoming primary election, Hill meets the third element. *Id.* at ¶ 22. As to the first two elements, the relevant question is whether LaRose has clearly disregarded applicable law. *Id.* at ¶ 23.

### a. Statutory argument

{¶ 10} LaRose argues that Hill's statutory argument in support of the writ is flawed because on its face, R.C. 3513.311(C) does not permit the replacement of a candidate for lieutenant governor within 70 days of a primary election in the event of the candidate's withdrawal. We agree.

{¶ 11} R.C. 3513.311(C) provides:

4

> *If a candidate for the office of lieutenant governor dies on or after the seventieth day, but prior to the tenth day, before a primary election, the vacancy so created shall be filled by appointment by the joint candidate for the office of governor.* Such candidate for governor shall certify in writing and under oath to the secretary of state not later than the fifth day before the day of such election the name and residence address of the person selected to fill such vacancy.

(Emphasis added.) The provision creates a procedure for replacing a candidate for lieutenant governor at a primary election. But the provision's scope is restricted by the first sentence. That sentence limits the replacement procedure to a situation in which the candidate for lieutenant governor *dies* on or after the 70th day, but prior to the 10th day, before the primary election. In other words, for the provision of the statute to apply, it must be shown that the candidate for lieutenant governor *died* within the prescribed window of time.

{¶ 12} Here, Moats withdrew as a candidate for lieutenant governor 13 days before the primary election, thus falling within the window of time contemplated by R.C. 3513.311(C). But Hill's complaint does not attest that the vacancy created by Moats's withdrawal arose from Moats's death. Without such an attestation, the statute does not apply, as LaRose correctly determined.

{¶ 13} Faced with a statute that does not apply on the facts alleged in her complaint, Hill counters that R.C. 3513.311(C)[1] should be interpreted to permit the replacement of Moats with Barnett because the statute "is silent" on whether a replacement can be made on the facts alleged. Hill goes on to urge this court to read R.C. 3513.311(C) against the backdrop of R.C. 3513.311(A), the latter of

---

1. Hill's complaint is interspersed with citations to R.C. 3513.31, which are likely typos.

which creates a procedure for replacing a "candidate for lieutenant governor" who "withdraws . . . as a candidate prior to the seventieth day before the day of a primary election." Finally, Hill urges this court to read into R.C. 3513.311(C) an implied right to replace Moats with Barnett as her candidate for lieutenant governor.

{¶ 14} Hill's argument is unpersuasive. To begin, statutory silence is not a license for this court to pick up the drafting pen and rewrite R.C. 3513.311(C) to cover a situation the General Assembly could have addressed but did not. The court's function is to provide a fair reading of what the General Assembly wrote. *See Stingray Pressure Pumping, L.L.C. v. Harris*, 2023-Ohio-2598, ¶ 22. Thus, "in construing a statute, a court may not add or delete words." *In re Establishing the Solar Generation Rider*, 2022-Ohio-4348, ¶ 20. Because the statute's text is paramount, it follows that "a matter not covered [by the statute's text] is to be treated as not covered." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 93 (2012) (discussing the omitted-case canon). Applying these principles, we must reject Hill's invitation to construe the statute to provide for a method of replacement that is not covered by the statute.

{¶ 15} R.C. 3513.311(A) actually cuts against—not in favor of—Hill's argument. That provision shows that the General Assembly is capable of creating a procedure for replacing a candidate for lieutenant governor who withdraws before a primary election. The fact that the General Assembly created such a procedure for effecting a replacement of a lieutenant-governor candidate in the event of the candidate's withdrawal more than 70 days before the primary election, but not any later, shows that no such procedure exists for effecting Hill's attempt to replace Moats with Barnett. *See Erickson v. Morrison*, 2021-Ohio-746, ¶ 29 (observing that the court's function is to apply the words that the General Assembly wrote, not words that it "could have—but did not" write).

{¶ 16} Hill's assertion of "implied rights" fails for similar reasons. As with Hill's previous arguments, this argument invites the court to amend R.C.

3513.311(C) under the guise of interpretation.  This we cannot do.  *See Erickson* at ¶ 29.

{¶ 17} Hill's statutory argument cannot withstand LaRose's motion to dismiss.

### b.  Constitutional argument

{¶ 18} As a fallback, Hill's complaint asserts that if the court determines that R.C. 3513.311(C) cannot be read to permit the replacement of Moats with Barnett, then the statute is unconstitutional as applied.  Hill's view is that R.C. 3513.311(C) is constitutionally defective because it creates a replacement procedure in the event of a candidate for lieutenant governor's *death* but not in the event of a candidate for lieutenant governor's withdrawal.  Hill views this distinction as arbitrary, and she maintains that no compelling state interest supports the line that R.C. 3513.311(C) draws.  LaRose urges this court to reject Hill's constitutional argument, saying that the statute serves important state interests, such as fostering ballot clarity and avoiding disruption to the orderly administration of the state's elections.

### i.  Suitability of applying *Anderson-Burdick* analysis at motion-to-dismiss stage

{¶ 19} Before going further, we note that courts appear to be split on whether constitutional challenges akin to Hill's, which implicate an *Anderson-Burdick* analysis (discussed below), are suitable for review at the motion-to-dismiss stage.  *Compare, e.g.*, *Beiersdorfer v. LaRose*, 397 F.Supp.3d 1037, 1049, fn. 6 (N.D.Ohio 2019) (observing that "[t]he Sixth Circuit [has] approved the application of *Anderson-Burdick* at the motion-to-dismiss stage") *with Alabama State Conference of the NAACP v. Marshall*, 746 F.Supp.3d 1203, 1235, fn. 9 (N.D.Ala. 2024) (observing that it is difficult to apply *Anderson-Burdick* analysis at the motion-to-dismiss stage because the analysis emphasizes context and specific circumstances).  Here, Hill does not object to LaRose's analysis of her constitutional challenge under *Anderson-Burdick* by way of a motion to dismiss.

Assuming without deciding that such an analysis is proper at this stage of the case, we consider *Anderson-Burdick* below.

ii. *Anderson-Burdick*

{¶ 20} Hill's constitutional challenge rests on her view that the line drawn by R.C. 3513.311(C) is arbitrary and thereby burdens voting rights, rights of association, and rights of ballot access. Hill's complaint does not provide a source of law for these rights. But as LaRose points out, Hill's contentions are best understood as implicating rights recognized under the First and Fourteenth Amendments to the United States Constitution. *See, e.g.*, *Reynolds v. Sims*, 377 U.S. 533, 561-562 (1964) (observing under the Fourteenth Amendment that "the right of suffrage is a fundamental matter in a free and democratic society"); *Lee v. Keith*, 463 F.3d 763, 767-768 (7th Cir. 2006) ("The First Amendment, as incorporated against the states by the Fourteenth Amendment, protects the right of citizens to band together in promoting among the electorate candidates who espouse their political views." [Cleaned up.]); *Florida Indep. Party v. Florida Secretary of State*, 967 F.3d 1277, 1281 (11th Cir. 2020) (observing that ballot-access challenges are cognizable under both the First and Fourteenth Amendments); *accord State ex rel. Trumbull Cty. Republican Cent. Commt. v. Trumbull Cty. Bd. of Elections*, 2022-Ohio-3268, ¶ 20 (plurality opinion) (observing that the relators' voting challenge lacked specificity but was best understood as relying on the First and Fourteenth Amendments).

{¶ 21} Hill must overcome the presumption that R.C. 3513.311(C) is constitutional. *See VVF Intervest, L.L.C. v. Harris*, 2025-Ohio-5680, ¶ 41. In attempting to do so, Hill claims that strict scrutiny should apply to the court's review of the statute in light of the United States Supreme Court's decision in *Burdick v. Takushi*, 504 U.S. 428 (1992), and this court's plurality decision in *State ex rel. Brown v. Ashtabula Cty. Bd. of Elections*, 2014-Ohio-4022, which relied in part on *Burdick* and in part on the United States Supreme Court's decision in

*Anderson v. Celebrezze*, 460 U.S. 780 (1983). Read as a whole, Hill's point is that the *Anderson-Burdick* framework establishes the standard for constitutional analysis, and that under such an analysis, R.C. 3513.311(C) does not survive strict scrutiny. For his part, LaRose agrees that this framework establishes the guardrails for analysis but disagrees that strict scrutiny applies.

{¶ 22} "Under *Anderson-Burdick*, the level of scrutiny applied 'depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights.' " *Daunt v. Benson*, 999 F.3d 299, 310 (6th Cir. 2021), quoting *Burdick* at 434. The framework "applies to a wide array of claims touching on the election process." *Id.* at 314; *see also Mazo v. New Jersey Secretary of State*, 54 F.4th 124, 140 (3d Cir. 2022) (same). When a state election regulation severely burdens First and Fourteenth Amendment rights, the regulation must be "'narrowly drawn to advance a state interest of compelling importance.' " *Burdick* at 434, quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992). For example, "a law severely burdens voting rights if it discriminates based on political content instead of neutral factors or if there are few alternative means of access to the ballot." *State ex rel. Watson v. Hamilton Cty. Bd. of Elections*, 2000-Ohio-318, ¶ 21. "But when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick* at 434, quoting *Anderson* at 788.

{¶ 23} Hill's call for strict scrutiny is unpersuasive. As we have said, "the fact that a state creates barriers that limit[] the field of candidates from which voters may choose does not *per se* compel close scrutiny." *State ex rel. Purdy v. Clermont Cty. Bd. of Elections*, 1997-Ohio-278, ¶ 17. Here, R.C. 3513.311(C) does not create an outright ban on attempts to replace candidates for lieutenant governors at a primary election. Rather, it creates a limitation under which a replacement may be effected, specifying that the candidate's death is the triggering condition for the

provision to apply. So too, the limitation contains neutral criteria, applying evenhandedly to candidates irrespective of the political content they espouse.

{¶ 24} Although Hill focuses on R.C. 3513.311(C), a proper *Anderson-Burdick* analysis does not evaluate the challenged provision in isolation; rather, it considers, among other things, the "interaction of individual provisions with the election system as a whole," *Luft v. Evers*, 963 F.3d 665, 671 (7th Cir. 2020); *see also Mays v. LaRose*, 951 F.3d 775, 785 (6th Cir. 2020) (under *Anderson-Burdick*, when considering the burden that Ohio's treatment of confined electors places on the right to vote, a court should consider "the landscape of all opportunities that Ohio provides to vote").

{¶ 25} Most relevant here is R.C. 3513.311(A), which permits the replacement of a candidate for lieutenant governor in a primary election provided the candidate withdraws prior to the 70th day before the election. The fact that the General Assembly did not create an analogous procedure in R.C. 3513.311(C) can be understood as reflecting the State's important regulatory interest in ensuring "some sort of order, rather than chaos" as election day nears, *Storer v. Brown*, 415 U.S. 724, 730 (1974). Indeed, "[t]here is surely an important state interest . . . in avoiding confusion, deception, and even frustration of the democratic process" at an election. *Jenness v. Fortson*, 403 U.S. 431, 442 (1971). Were it permissible to replace a withdrawn candidate for lieutenant governor close to a primary election, as Hill seeks to do here, it could invite last-minute political maneuvering that seeks to reorder the composition of a gubernatorial ticket based on nothing more than late-breaking polling data, thereby sowing confusion among voters and election administrators. The limitation written into R.C. 3513.311(C) is a reasonable safeguard against gamesmanship of this sort. In contrast to a candidate's withdrawal, a candidate's death is not so manipulable, which explains why the General Assembly permits the replacement of a candidate for lieutenant governor who dies close to a primary election.

{¶ 26} Hill's constitutional challenge cannot withstand LaRose's motion to dismiss.

### 2. Declaratory Judgment (Count 2) and Injunction (Count 3)

{¶ 27} In addition to her mandamus claim (Count 1), Hill asserts a claim for a declaratory judgment (Count 2) that asks this court to (1) declare that R.C. 3513.311(C) permits the replacement of a lieutenant-governor candidate who withdraws within 70 days of an election or, alternatively, (2) declare R.C. 3513.311(C) unconstitutional as applied, to the extent that the court determines that the statute does not support Hill's interpretation. Hill also asserts a claim for an injunction (Count 3), asking this court to enjoin LaRose from enforcing his determinations.

{¶ 28} LaRose's motion to dismiss does not challenge Hill's claims seeking a declaratory judgment and an injunction. But the propriety of these claims implicates a question pertaining to this court's jurisdiction, and therefore we may consider the claims sua sponte. *See State v. Davis*, 2011-Ohio-5028, ¶ 11 ("Subject-matter jurisdiction cannot be waived and is properly raised by this court sua sponte.").

{¶ 29} Because this court lacks original jurisdiction over a claim seeking a declaratory judgment, we dismiss Count 2 of the complaint for lack of jurisdiction. *See State ex rel. Barr v. Wesson*, 2023-Ohio-3028, ¶ 16 ("We do not have original jurisdiction under the Ohio Constitution over actions in the nature of declaratory judgment"). And because this court lacks original jurisdiction to grant a prohibitory injunction, which is effectively what Hill seeks in Count 3 of her complaint, we also dismiss that count for lack of jurisdiction. *See State ex rel. Crabtree v. Franklin Cty. Bd. of Health*, 1997-Ohio-274, ¶ 6 ("Neither this court nor a court of appeals has original jurisdiction in prohibitory injunction.").

### III. CONCLUSION

{¶ 30} We grant LaRose's motion and dismiss Hill's complaint seeking relief in mandamus. We sua sponte dismiss the complaint to the extent it seeks a declaratory judgment and a prohibitory injunction. Hill's emergency motion is denied.

Complaint dismissed.

———————————

**BRUNNER, J., concurring in judgment only.**

{¶ 31} I agree with the majority opinion's analysis of the constitutional issue in this case. I write separately to highlight a point of tension between this case and one we decided two years ago, *State ex rel. Tjaden v. Geauga Cty. Bd. of Elections*, 2024-Ohio-3396. The tension concerns the remedies available when this court finds a ballot-access statute unconstitutional.

{¶ 32} In *Tjaden*, the relator, Justin Tjaden, sought a writ of mandamus ordering that his name be placed on the general-election ballot as an independent candidate for state office. *Id.* at ¶ 1. He argued that a signature-gathering statute applicable to independent candidates violated his constitutional right to equal protection. *Id.* at ¶ 35. This court determined that it was unnecessary to decide whether the statute was constitutional, however, stating:

> If this court were to agree with Tjaden and declare [the statute] unconstitutional, it would mean that the statute is of no force and effect. But in that instance, Tjaden would be hoisted by his own petard: without [the statute] in effect, there is no statute that sets forth the requirements for an independent candidate to qualify for the general-election ballot.

(Citation omitted.) *Id.* at ¶ 38. I would have addressed the merits of Tjaden's

constitutional argument. *Id.* at ¶ 42 (Brunner, J., concurring in judgment only).

{¶ 33} One could argue that the logic of *Tjaden* applies here—even if this court were to find R.C. 3513.311(C) unconstitutional, that ruling would not permit relator, Heather Hill, to replace her candidate for lieutenant governor. Rather, it would simply mean that there would be no scenario under Ohio law in which a candidate for lieutenant governor could be replaced within 70 days of a primary election. As in *Tjaden*, were Hill to prevail on her constitutional argument, it would have the effect of her winning the battle, but losing the war.

{¶ 34} I agree with the majority opinion in not taking that approach in this case. However, with this separate opinion, I wish to point out that this court has the power in equity in this original action to provide a remedy if it were to rule in Hill's favor on her constitutional argument. For example, one remedy, at least arguably, would be for this court to hold that R.C. 3513.311(C) applies when a candidate for lieutenant governor withdraws from the ballot for any reason.

{¶ 35} It is our duty to provide clearer guidance regarding the remedies available when we find such constitutional violations. While in most cases we demur to the General Assembly to address or correct by statute what remedies are available, our constitutional system of checks and balances does not forbid us from fashioning remedies when equity demands it. Otherwise, individual rights as reviewed by this court exist in name only.

{¶ 36} With these additional observations, I respectfully concur in judgment only.

_____

Gottlieb, Johnston, Beam & Dal Ponte, P.L.L., and Miles D. Fries, for relator.

Dave Yost, Ohio Attorney General, and Julie M. Pfeiffer and Ann Yackshaw, assistant attorneys general, for respondent.

_____